WOLF & WOLF, LLP
Jason M. Wolf (JW-6332)
910 Grand Concourse, Ste. 1F
Bronx, New York 10451
(718) 410-0653
email: knowwe@aol.com

*Attorneys for Plaintiff Stephen E. Strauss*

JUDGE CHIN

08 CV 1862

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
STEPHEN E. STRAUSS.

                                                **JURY TRIAL DEMANDED**

                Plaintiff,

                                                **COMPLAINT**

    -against-

ARCHITECTURAL INTERIOR MAINTENANCE, INC.
JOHN LANGENBACHER COMPANY, INC.,
JOAN L. BOYD, as Owner of Architectural Interior
Maintenance, Inc., JOAN L. BOYD, as Owner of
John Langenbacher Company, Inc., and JOAN L. BOYD
Individually, MATTHEW H. BOYD, as President of
Architectural Interior Maintenance, MATTHEW H. BOYD
as CEO of John Langenbacher Company, Inc., and
MATTHEW H. BOYD, Individually, WILLIAM BOYD, as
former President of John Langenbacher Company Inc.,
and WILLIAM BOYD, Individually, MICHAEL HANRAHAN,
as Corporate Attorney for Architectural Interior Maintenance,
Inc., and MICHAEL HANRAHAN, Individually,

                Defendants.
------------------------------------------------------------------------x

    Plaintiff, by and through his attorneys, Wolf & Wolf LLP alleges as follows:

    1.  Plaintiff resides at 56 Hanford Drive, Fairfield, CT 06824

    2.  Defendant Architectural Interior Maintenance Inc. is a corporation with principal offices located at 888 Longfellow Avenue, Bronx, New York 10474

    3.  Defendant John Langenbacher Company, Inc. is a corporation with principal offices located at 888 Longfellow Avenue, Bronx, New York 10474

4. Defendant Joan L. Boyd is the principal owner of both Architectural Interior Maintenance Inc., and John Langenbacher Company, Inc.

5. Defendant Matthew H. Boyd is the President of Architectural Interior Maintenance and the CEO of John Langenbacher Company, Inc.

6. Defendant William Boyd is the former President of John Langenbacher Company, Inc. residing at 216 Barker Street, Bedford, NY 10506.

7. Defendant Michael Hanrahan is the attorney for defendants Architectural Interior Maintenance Inc., and John Langenbacher Inc. and maintains offices at 438 5th Avenue, Pelham, NY 10803.

8. Jurisdiction and venue are appropriate under 42 U.S.C §§1332 and 1441 as complete diversity exists between the plaintiff and defendants and the amount in controversy exceeds $75,000.00.

## COMMON NUCLEUS OF OPERATIVE FACTS

9. On or about March 2006, plaintiff resigned his employment as Vice President and General Manager of Architectural Interior Maintenance Inc. and Senior Management Consultant to the CEO of John Langenbacher Company, Inc.

10. In April 2006, plaintiff was hired by RIMI Corporate Facilities Refurbishing.

11. In May 2006, after repeated requests from Matthew Boyd, President of Architectural Interior Maintenance and CEO of John Langenbacher Company Inc., plaintiff agreed to return to both defendant corporations provided he was employed pursuant to a written employment contract.

12. In May 2006 plaintiff received a written employment offer in the form of a contract signed by Matthew Boyd at the offices of defendant Hanrahan, and under Hanrahan's supervision.

13. The contract provided a term of three years and an annual salary to plaintiff of $102,500.00 payable weekly. Plaintiff was also granted three weeks vacation and seven

sick days which would be distributed to him via financial compensation should he not utilize vacation and sick time at the expiration of a given calendar year.  The vacation time was extended to four weeks paid to plaintiff if unused effective December 15, 2007.

14.  Pursuant to the contract, plaintiff was named Vice President and General Manager of Architectural Interior Maintenance Inc. and was named Executive Vice President and General Manager of John Langenbacher Company.

15.  The contract also provided that in the event of the closure of the business, default, seizure of bankruptcy, plaintiff would be compensated the entire balance of salary and benefits in full for the remaining years of the three year term of the contract.

16.  Plaintiff refused to sign the contract in May 2006 without a signature or written assurances that the owner was committed to rebuilding Langenbacher and sustaining Architectural Interior Maintenance.

17.  In January 2007, Plaintiff received the aforementioned letter in assurance, signed the contract making the contract effective , and accepted the offers contained in the contract with the consideration provided for therein.   As agreed the effective date of the contract was January 11, 2007 and the expiration date was January 11, 2010.

18.  The parties understood the agreement to be a valid contract complete with offer, acceptance, and consideration and relied on the terms incorporated within.

AS AND FOR A FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT

19. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1-18 of the complaint.

20.  That in January 2008, defendant Joan L. Boyd ordered the closing of both defendant corporations despite the fact that Architectural Interior Maintenance Inc. was profitable.

21. That plaintiff's employment with both defendant corporations was terminated effective February 15, 2008 due to the closure of both defendant corporations.

22. That pursuant to the written contract agreed to between the parties, plaintiff is owed the remainder of his salary and payment for Medical Coverage for the 23 months remaining in the term of his contract (February 2008 through January 2010), comp time for period of contract elapsed from January 2007 to January 2008, reimbursement for salary decreases during the first year of his contract , and vacation time from January 2007 through January 2008.. Plaintiff is also owed reimbursement on his legal fees based on defendants' breach.

23. That plaintiff has demanded said monies and defendants' refuse to honor the contract.

24. That defendants' foregoing actions constituted a material breach of contract, which caused plaintiff to be damaged in the sum of two hundred ninety seven thousand six hundred fifteen dollars. ($297,615.00)

WHEREFORE, plaintiffs demand judgment against the defendants for an amount of $297,615.00 based on breach of the parties contract.

## AS AND FOR A SECOND CAUSE OF ACTION FOR FRAUD

25. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1-24 of the complaint.

26. In March 2006, based on plaintiff's continued refusal to participate in illegal kickback schemes proffered by defendants William Boyd and Matthew Boyd involving, among other construction managers, McHugh DiVincent Alessi General Contractors; applications by Langenbacher to Architectural Interior Management of grossly inflated inter-company overhead charges; and continuing erosion and deterioration of plaintiff's reputation by association with Langenbacher and AIM, plaintiff left the defendant corporations and secured employment with RIMI Corporate Facilities Refurbishing.

27. During the six week period that plaintiff worked for RIMI, defendant Matthew Boyd called him twice a week begging plaintiff to return to work for the defendant

corporations.

28. At or around April 2006, Defendant Matthew Boyd fired William Boyd as President of John Langenbacher Company Inc. and indicated so to plaintiff to convince him that the past corruption at the defendant corporations no longer existed.

29. In May 2006, Plaintiff had meetings and telephone discussions with defendants Hanrahan and Matthew Boyd during which he agreed to return to the defendant corporations but demanded a written employment contract which was agreed to by Plaintiff and Defendant Matthew Boyd, and reviewed and revised by defendant Hanrahan. Defendant Hanrahan indicated that he did not believe a contract was necessary and that plaintiff should not have this contract reviewed by an attorney.

30. Plaintiff also based his decision to return to the defendant corporations based on several promises made to him, and made part of the language of the employment contract.

31. One of these promises was that the owner of the company, Joan L. Boyd, was committed to rebuilding defendant John Langenbacher Company Inc.., and to sustaining AIM, Inc.

32. Based on the assurances of defendants Matthew Boyd and Michael Hanrahan at the May 18, 2006 meeting at defendant Hanrahan's offices with respect to the commitment by the defendant corporations to continuation and longevity of Architectural Interior Maintenance and John Langenbacher Co. Inc, , plaintiff resigned from RIMI and returned to work for the defendant corporations.

33. In August 2006, plaintiff submitted a cost-cutting plan to defendant Hanrahan and advised  Hanrahan that plaintiff needed his support since defendant Matthew Boyd had loyalties to the employees who would be affected. Plaintiff's plan also called for cuts in the CEO's Salary and the plaintiff's salary. Defendant Hanrahan then told plaintiff that he was considering a filing of bankruptcy for Langenbacher,

despite the commitment to longevity made three months earlier at the May 16, 2006 meeting. Hanrahan said that first steps were to consult with attorneys specializing in the area of bankruptcy.

34. In May 2006, plaintiff began collecting receivables in arrears. In September 2006 in following up in collecting $100,000 owed to defendant Langenbacher by Vanguard Construction, plaintiff was told by Vanguard's owner of an "agreement" that Vanguard had arranged with defendant Matthew Boyd.   Defendant Matthew Boyd told plaintiff that Vanguard had asked Matthew Boyd to submit Change Orders to Vanguard for work that would not take place but which would allow Vanguard to bill and collect the amounts of the Change Orders from Vanguard's client, BUDDAKAN Restaurant. Langenbacher had, as part of this arrangement, also performed at least $20,000.00 worth of work at Vanguard's owner's residence, and then charged the work to the BUDDAKAN project.

35.    In October 2006, defendant Hanrahan retained Attorney Lawrence Reich of White Plains, NY as tax counsel. Mr. Reich advised Mr. Hanrahan, the plaintiff and defendant Matthew Boyd that a Chapter 11 filing would not protect the Owner's estate from the IRS Withholding Tax debt since it was considered "trust fund" debt. Mr. Reich also cautioned Mr. Hanrahan against any activity that could be called evasive. Defendant Hanrahan was not satisfied by Mr. Reich's advice and dismissed Mr. Reich as tax counsel.

36.    In November 2006, defendant Hanrahan retained Abe Backenroth of New York City to advise the Owner in  the Withholding Tax "trust fund" debt issue. Mr. Backenroth advised that Chapter 11 filing would be ineffective in that the IRS debt was "trust fund debt". Mr. Backenroth  cautioned Mr. Hanrahan, as had attorney Lawrence Reich of White Plains, NY, that any evasive activity was not to be pursued.  Mr.

Backenroth advised Mr. Hanrahan that the Owner might legally form a lending entity which could lend the Company the money to pay its debts. The lending entity could then restructure debts, establish payment plans, etc., with the IRS and other creditors.

37. In January 2007 defendant Hanrahan informed plaintiff and defendant Matthew Boyd in meetings that he had already begun to form a Lending Entity for the Owner as Mr. Backenroth had advised.

38. In February 2007 defendant Hanrahan ordered Strauss to submit Langenbacher's resignation from membership in the Manufacturing Woodworkers' Association (MWA), saying that the Lending Entity would dictate that the Carpenters' Union renegotiate better terms for Langenbacher. The re-negotiation of contract was also intended to secure a working agreement between the Carpenter's Union and the Amalgamated Industrial union. These unions represented Langenbacher and AIM, respectively. The Lending Entity was to have negotiated with vendors and the IRS with regards to outstanding debt. The Lending Entity was never formed.

39. In March 2007, as ordered by defendant Hanrahan, the plaintiff's office formally made effective Langenbacher's resignation from membership in the MWA.

40. In April 2007, defendant Architectural Interior Maintenance was removed from the bids list for projects at Milbank Tweed being managed by MDA Construction. Plaintiff wrote an email to defendant Hanrahan asking him, as the Corporate Counsel to intercede with Milbank Tweed and restore AIM's place on the bid list for projects. Plaintiff pointed out that he had refused to participate in MDA's kick-back scheme two years earlier and that Milbank would certainly restore defendant Architectural Interior Maintenance's status as a qualified bidder. Defendant Hanrahan refused to help in the matter thus further negatively impacting the defendant corporations' future.

41. In May 2007, defendant Hanrahan informed plaintiff that he would not renegotiate the terms of Langenbacher's union contract under the company's present

ownership contract with the Union, and that Matthew Boyd would become the Owner and that Langenbacher would have to renegotiate the contract's terms. Defendant Matthew Boyd was expected to assume all debts and liabilities in assuming ownership of the Company.

42. In June 2007, plaintiff was finally given figures on IRS Withholding Tax debt and trade debt, which were approximately $3,000,000. In Plaintiff's capacity as a consultant to the CEO, Plaintiff advised Matthew Boyd that assuming such a debt would be completely fool-hardy. Strauss advised Matthew Boyd to resign from his position under protest. Strauss informed Matthew Boyd in writing that unless Hanrahan acted in his capacity as the Owner's attorney and the Company's attorney in advising the Owner to clear up the debts for which an owner would be responsible, Strauss would research the process of bringing a complaint against Hanrahan.

43. As of August 2007, at least $650,000 from Langenbacher's accounts had been "swept" by the IRS and the State of New York as part of levies against the Company for non-payment of Withholding Tax debt. Levies by the IRS had also been brought against defendants Matthew Boyd and owner Joan L. Boyd. Defendant Matthew Boyd continued to assure plaintiff that Hanrahan was setting up two new companies for Matthew Boyd's ownership. Defendant Matthew Boyd had Hanrahan's and the owner's assurances that all debts would be cleared up and no liabilities would accrue to him or to the new companies.

44. In September 2007 defendant Hanrahan began to assert in phone calls to Langenbacher's staff that the administrative staff was responsible for paying bills other than IRS Withholding Tax "trust fund debt". Defendant Hanrahan continued to receive weekly payment for fees in retainer as the Company's Attorney.

45. In September 2007, plaintiff discovered that over $100,000 of work had been performed at the residence of the owner of LAVAL construction. The work had

been communicated to Matthew Boyd, he asked Matthew Boyd, he said that the arrangement was a favor to LAVAL's owner.

46   In October 2007, defendant Hanrahan's assertions that Langenbacher's staff was responsible in non-payment of IRS debt increased.  Hanrahan sent a letter to Langenbacher's offices asserting that the staff, Matthew Boyd and plaintiff were responsible in not paying the IRS debt.

47.  In October 2007, Plaintiff filed a Grievance against defendant Hanrahan with the 9th Judicial District Grievance Committee.

48.  In November 2007, Plaintiff had for at least 5 months been cautioning all named defendants that Matthew Boyd should not be executing Waivers of Lien to obtain payment from projects underway unless he had the assurances from the Owner that the IRS debt was going to be satisfied. Electronic "sweeps" of Langenbacher accounts had made it impossible to complete projects that had been the subject of Waivers of lien for payment.

49.  In December 2007,   General Contractors threatened suit under the default clauses of their contracts due to work having stopped by Langenbacher. The Carpenters' Union was shutting down projects for non-payment of members' benefits by Langenbacher.

50.  In early January 2008, Joan L. Boyd informed plaintiff that she would hold him responsible as General Manager for all the problems at Langenbacher, including IRS debt. Mrs. Boyd also informed plaintiff that she would not pay any more IRS debt. Plaintiff brought a 2nd Grievance against Hanrahan.  On January 25, 2008, Plaintiff was summoned to a meeting with Hanrahan and the Owner, and ordered to shut down Langenbacher and Architectural Interior Maintenance immediately. The Owner and the CEO informed plaintiff on January 30, 2008 that his employment would be terminated on February 15, 2008.

In February 2008, plaintiff discovered that defendant Hanrahan had ordered the companies' staff to search through Strauss's files for confidential materials related to Strauss's Grievances against Hanrahan. Strauss brought his third grievance against attorney Michael Hanrahan.

52. That the foregoing clearly demonstrates that defendants Matthew Boyd and Michael Hanrahan, on behalf of the defendant corporations and their owner, knowingly, intentionally, and maliciously misrepresented to plaintiff on May 18, 2006 that the owner of the defendant corporations was committed to pursuing longevity and continuation of Defendants Architectural Interior Maintenance and John Langenbacher Company, Inc.

53. That the statement was false when stated to plaintiff by defendants Matthew Boyd and Michael Hanrahan made solely for the purposes of inducing him to resign from RIMI and rejoin the defendant corporations.

54. That plaintiff relied on the false representations of defendants Matthew Boyd and Michael Hanrahan to the plaintiff's detriment, which constituted fraud.

55. That defendant Matthew Boyd's fraudulent actions are attributable to both Architectural Interior Maintenance Inc., and John Langenbacher Company, Inc.

56. That plaintiff has been damaged by the conduct of defendants in the amount of TEN MILLION DOLLARS ($10,000,000.00).

**WHEREFORE**, plaintiffs demand judgment against the defendants for an amount of $10,000,000.00 based on defendants' fraudulent conduct.

AS AND A THIRD CAUSE OF ACTION FOR DAMAGES UNDER SECTION
349 (A) OF THE GENERAL BUSINESS LAW OF THE STATE OF NEW YORK

57. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1-56 of the complaint.

58. That defendants inducing plaintiff to leave his position at RIMI when they had no intention of continuing and sustaining the defendant corporations was deceptive and

caused plaintiff financial injury.

**WHEREFORE**, plaintiffs demand judgment against the defendants for an amount to be determined by a jury based on a violation of Section 349 of the General Business Law of the State of New York, together with costs to cover the action including legal fees.

Dated: Bronx, New York
       February 21, 2008

                              Yours, etc.

                              WOLF & WOLF LLP
                              910 Grand Concourse
                              Suite 1F
                              Bronx, New York 10451
                              (718) 410-0653

                              By: Jason M. Wolf, Esq. (JW 6332)

Case 1:08-cv-01862-DC    Document 1    Filed 02/25/2008    Page 11 of 11