George R. Hinckley Jr. (GH-7511)
TRAIGER & HINCKLEY LLP
501 Fifth Ave. #506
New York, New York 10017-7838
Tel. 212-759-4933
Fax 212-656-1531
Email grh@hinckley.org

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHEN E. STRAUSS,

                              Plaintiff,

                    v.

ARCHITECTURAL INTERIOR MAINTENANCE,
INC., JOHN LANGENBACHER CO. INC., JOAN L.
BOYD, as owner of Architectural Interior Maintenance,
Inc., and JOAN L. BOYD individually, MATTHEW H.
BOYD, as President of Architectural Interior
Maintenance, MATTHEW H. BOYD as CEO of John
Langenbacher Company Inc., and MATTHEW H.
BOYD, individually, WILLIAM BOYD, as former
President of John Langenbacher Company Inc. Inc., and
WILLIAM BOYD, individually, MICHAEL
HANRAHAN, as corporate attorney for Architectural
Interior Maintenance, Inc., and MICHAEL
HANRAHAN, individually,

                              Defendants.

No. 08 CV 1862 (DC)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MICHAEL HANAHAN'S  MOTION TO DISMISS THE COMPLAINT

September 5, 2008

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ...................................................................................1

FACTS ........................................................................................................................3

    1.  The Parties. ..................................................................................................3

    2.  The Written Employment Contract Alleged by Plaintiff. ...................................4

    3.  Plaintiff's Breach of Contract Claim for $297,615 against AIM and Langenbacher -- Which is Not Pleaded Against Mr. Hanrahan. ......................5

    4.  Plaintiff's "Fraudulent Inducement" Allegation – An Alleged Statement by Mr. Hanrahan Regarding the Commitment of Mrs. Boyd to the "Continuation" and "Longevity" of AIM and Langenbacher. ................5

    5.  Plaintiff's Claim Against Mr. Hanrahan Under § 349 of the N.Y General Business Law Has Been Dismissed With Prejudice. ..........................7

ARGUMENT ..............................................................................................................7

I.   PLAINTIFF HAS FAILED TO STATE A CLAIM FOR FRAUDULENT INDUCEMENT ........................................................................................................7

  A.  The Standard on a Motion to Dismiss....................................................................7

  B.  Plaintiff's Fraud Claim Must Be Dismissed Because It Is Duplicative of His Contract Claim. ..........................................................................................8

    1.  New York Law Precludes Fraud Actions Where the "Only Fraud Charged Relates to a Breach of Contract." ........................................................8

    2.  Plaintiff's Allegations Regarding a Commitment to Pursuing "Continuation and Longevity" Pleads Nothing More Than an Intent to Perform under the Contract.  This Is Insufficient to State a Claim for Fraud. ................................................................................................10

    3.  Plaintiff's Complaint Admits that the Claimed Promises Regarding Mrs. Boyd's Commitment to "Rebuilding" and "Sustaining" Her Businesses Are Part of His Alleged Employment Contract.  Thus, the Only Fraud Charged Relates to a Breach of Contract....................................13

    4.  Plaintiff's "Fraudulent Inducement" Claim Is Barred by the Recent Decision of the New York Court of Appeals in *Smalley v. Dreyfus*...............14

  C.  Plaintiff Fails to Plead a Claim for Fraud. ...........................................................16

    1.  Plaintiff Fails to Allege a False Statement of a Present, Material Fact. ..........17

    2.  Mr. Hanrahan's Alleged Expression of his Opinion Regarding His Client's Commitment to "Pursuing Longevity and Continuation" of Her Business Is Not Actionable as Fraud. .......................................................18

3.  Plaintiff Does Not Allege Facts Supporting Reasonable Reliance Upon Mr. Hanrahan's Alleged Verbal Assurances Regarding Mrs. Boyd's Commitment to "Pursuing Longevity" of AIM and Langenbacher.  On the Contrary, the Complaint Alleges the Exact Opposite. ..............................19

D.  The Complaint Against Mr. Hanrahan Should Also Be Dismissed Under the Doctrine of Agent Immunity. ........................................................................21

CONCLUSION ..............................................................................................................23

# TABLE OF AUTHORITIES

*Page*

**Cases**

*A to Z Assocs. v. Cooper*, 215 A.D.2d 161, 626 N.Y.S.2d 143 (1st Dep't 1995) ...............................................................................................................6

*American Food & Vending Corp. v. Int'l Business Machines Corp.*, 245 A.D.2d 1089, 667 N.Y.S.2d 545 (4th Dep't 1997) ..........................................18

*Bell Atlantic Corp. v. Twombly*, 547 U.S.___, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .................................................................................................7, 8

*Bridgestone/Firestone, Inc., v. Recovery Credit Servs., Inc.*, 98 F.3d 13 (2d Cir. 1996) .........................................................................................9, 11, 13

*Bridgeway Corp., v. Citibank, N.A*, 132 F. Supp. 2d 297 (S.D.N.Y. 2001) (Chin, J) .....................................................................................................9, 13

*Burger v. Brookhaven Medical Arts Bldg., Inc.*, 131 A.D.2d 622 (2d Dep't 1987) ..............................................................................................................21

*CAMOFI Master LDC, v. College Partnership, Inc.*, 452 F. Supp. 2d 462 (S.D.N.Y. 2006) (Chin, J.) ...........................................................9, 11, 12, 13

*Campbell v. Brown*, 4 F. Cas. 1158 (C.C.W.D. Tex. 1876) .................................21

*Cougar Audio, Inc. v. Reich*, 2000 U.S. Dist. LEXIS 4894, No. 99 Civ. 4498, 2000 WL 420546 (S.D.N.Y. Apr. 18, 2000) ........................................9

*D.S. Am. (E.) v. Chromagrafx Imaging Sys.*, 873 F. Supp. 786 (E.D.N.Y. 1995) (Wexler, J.) ....................................................................................17

*DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308 (S.D.N.Y. 2002) .............................9

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168 (2d Cir. 2004).....................................................................................16

*Factory Associates & Exporters, Inc. v. Lehigh Safety Shoe Co. LLC*, 2007 U.S. Dist. LEXIS 46290, 2007 WL 1834599 (N.D.N.Y. June 26, 2007) .............................................................................................................10

*Garber v. Legg Mason Inc.*, 537 F. Supp. 2d 597 (S.D.N.Y. 2008) (Chin, J.) ...................................................................................................3, 7, 8

*Gavish v. Revlon, Inc.*, No. 00 Civ. 7291 (SHS), 2004 U.S. Dist. LEXIS 19771, 2004 WL 2210269 (S.D.N.Y. Sept. 30, 2004) ...................................3

*Horn v New York Times*, 100 NY2d 85, 790 N.E.2d 753, 760 N.Y.S.2d 378 (2003)......................................................................................................15

*Ingle v Glamore Motor Sales*, 73 NY2d 183, 535 N.E.2d 1311, 538 N.Y.S.2d 771 (1989)................................................................................15

*International CableTel v. Le Groupe Videotron Ltee*, 978 F. Supp. 483 (S.D.N.Y. 1997) (Sotomayor, J.)................................................................13, 17

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007), *cert. granted*, 128 S.Ct. 2931 (2008).......................................................................................................................7

*Irwin Sales, Inc. v. Prodigy Servs. Corp.*, 2000 U.S. Dist. LEXIS 9782 (S.D.N.Y. July 14, 2000) (Chin, J.).............................................................9, 12

*Kartinganer Assocs. v Town of New Windsor*, 108 A.D. 2d 898, 485 N.Y.S.2d 782 (2d Dep't 1985).....................................................................21

*Kimmell v. Schaefer*, 224 A.D.2d 217, 637 N.Y.S.2d 147 (1st Dep't 1996), *aff'd*, 88 N.Y.2d 805, 670 N.E.2d 226 (1996).................................................18

*Leve v. Franklin Capital Corp.*, 2004 U.S. Dist. LEXIS 11765, 02 Civ. 2116 (DC)  (S.D.N.Y. June 24, 2004) (Chin, J.), *aff'd*, 2005 U.S. App. LEXIS 10815 (2d Cir. June 1, 2005).............................................................22

*Lomaglio Assoc., Inc., v. LBK Mktg. Corp.,* 892 F. Supp. 89 (S.D.N.Y. 1995)...................................................................................................................10

*Manning v. Utils. Mut. Ins. Co.,* 254 F.3d 387 (2d Cir. 2001)................................8

*Marriott Int'l Inc. v. Downtown Athletic Club of New York City, Inc.,* 2003 U.S. Dist. LEXIS 9570, 02 Civ. 3906 (MBM), 2003 WL 21314056 (S.D.N.Y. June 6, 2003) ...............................................................................8, 9

*Murphy v American Home Prods. Corp.*, 58 NY2d 293, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983).....................................................................................15

*Murtha v. Yonkers Child Care Ass'n, Inc.,* 45 N.Y.2d 913, 383 N.E.2d 865, 411 N.Y.S.2d 219 (1978)........................................................................21, 22

*Novak, v. Scarborough Alliance Corp.*, 481 F. Supp. 2d 289 (S.D.N.Y. 2007) ..........................................................................................................21

*O'Connor v. Reader's Digest Assoc., Inc.,* 1993 U.S. Dist. LEXIS 13156, No. 92 Civ. 7414 (S.D.N.Y. Mar. 10, 1993) (Brieant, C.J)................17, 18, 19

*Papa's June Music, Inc. v. McLean*, 921 F. Supp. 1154 (S.D.N.Y. 1996) ............10

*Patane v. Clark,* 508 F.3d 106 (2d Cir. 2007) ........................................................8

*Pennecom B.V.,  Merrill Lynch & Co*., Inc., 2005 U.S. Dist. LEXIS 18130, 02 Civ. 5355 (DC) (S.D.N.Y. August 25, 2005) (Chin, J.) ................16, 17, 20

*Rabin v. MONY Life Ins. Co.*, 2007 U.S. Dist. LEXIS 18437 (S.D.N.Y. Mar. 8, 2007) (Swain, J.) ..............................................................................17

*Sabetay v Sterling Drug*, 69 NY2d 329, 506 N.E.2d 919, 514 N.Y.S.2d 209 (1987)........................................................................................................15

*Sheth v. New York Life Ins. Co.,* 273 A.D.2d 72, 709 N.Y.S.2d 74 (1st Dep't 2000)....................................................................................................18

*Sichel v. Unum Provident Corp.* 230 F. Supp. 2d 325 (S.D.N.Y. 2002) .........10, 13

*Smalley v. Dreyfus Corp.*, 10 N.Y.3d 55 882 N.E.2d 882, 853 N.Y.S.2d 270 (2008).................................................................................... passim

*Stewart v Jackson & Nash*, 976 F2d 86 (2d Cir. 1992) .........................................15

*Stumm v. Drive Entm't, Inc.*, 2001 U.S. Dist. LEXIS 21675, No. 00 Civ. 4676 (DC), 2002 WL 5589 (S.D.N.Y. Jan. 2, 2002) (Chin, J.).......................9

*Sudul v. Computer Outsourcing Servs., Inc.*, 868 F. Supp. 59 (S.D.N.Y. 1994)...............................................................................................9, 12, 13

*Telenor East Invest AS v. Altimo Holdings & Investments Ltd.*, 2008 U.S. Dist LEXIS 23458, 07 Civ. 4829 (DC) (S.D.N.Y. March 25, 2008) (Chin, J.). ...........................................................................................8

*Town of Haverstraw v. Columbia Elec. Corp.*, 237 F. Supp. 2d 452 (S.D.N.Y. 2002)..............................................................................9

*TVT Records v. Island Def Jam Music Group*, 412 F.3d 82 (2d Cir. 2005) ............9

*Weiner v McGraw-Hill, Inc.*, 57 NY2d 458, 443 N.E.2d 441, 457 N.Y.S.2d 193 (1982)...............................................................................15

## Other Authorities

6 NY Jur. 2d, *Attorneys at Law*, § 82, *et seq.* .........................................21

Defendant Michael Hanrahan, Esq. respectfully submits this memorandum of law in support of his motion, pursuant to Rules 12(b) (6) and 9(b) of the Federal Rules of Civil Procedure, to dismiss the Complaint against him.

## PRELIMINARY STATEMENT

Michael Hanrahan, Esq. should not be a party to this case. Plaintiff's claim is for breach of an alleged written employment contract with two companies, defendants AIM and Langenbacher. Mr. Hanrahan is the lawyer for the companies. He is not a party to any contract, nor does he have any ownership interest in the companies. The Complaint alleges no personal pecuniary gain by Mr. Hanrahan, or any act other than the representation of his clients. He is simply a lawyer, an agent.

The only claim against Mr. Hanrahan is for purported "fraudulent inducement" of the alleged employment contract. Plaintiff claims merely that Mr. Hanrahan told him in May 2006 that the owner of the companies, Mrs. Joan Boyd, was "committed to pursuing longevity and continuation" of her businesses. Plaintiff continued to be employed for one year and nine months after this purported statement by Mr. Hanrahan.

This is a textbook example of a case where "the only fraud charged relates to a breach of contract." The injury claimed by plaintiff flows solely from the early termination of his employment. Plaintiff claims to have a written contract guaranteeing employment until 2010. If so, then his contract provides his remedy. His breach of contract claim seeks damages of $297,615.00 for unpaid salary, vacation and medical benefits. Plaintiff does not and cannot identify any additional special damages that were caused by the purported statements regarding Mrs. Boyd's commitment the "continuation" and "longevity" of her businesses -- notwithstanding his round-number

demand for "TEN MILLION DOLLARS." (Compl. ¶56). Plaintiff alleges contract damages, not fraud damages.

Mr. Hanrahan's alleged statement regarding his client's commitment to pursuing the "longevity" and "continuation" of her businesses does not breach any duty "collateral or extraneous" to the employment contract. Quite to the contrary, plaintiff's Complaint affirmatively alleges that this precise representation is *part of* the employment contract.

Plaintiff's Complaint contains two significant, dispositive admissions. <u>First</u>, plaintiff admits that he did <u>not</u> rely on Mr. Hanrahan's alleged verbal assurances regarding the owner's commitment to longevity, but instead demanded "written assurances that the owner was committed to rebuilding Langenbacher and sustaining [AIM]." (Compl. ¶ 16). <u>Second</u>, plaintiff alleges that these assurances regarding longevity were "made part of the language of the employment contract." (Compl. ¶ 30). Either of these admissions supports the dismissal of the Complaint.

There can be no doubt as to the current state of New York law regarding claims for "fraudulent inducement" of employment. Just recently, in *Smalley v. Dreyfuss*, 10 N.Y.3d 55 (2008), the New York Court of Appeals ordered the dismissal, at the pleading stage, of "fraudulent inducement" claims by employees that were far more substantial than those made by plaintiff here, stating that: "Absent injury independent of termination, plaintiffs cannot recover damages for what is at bottom an alleged breach of contract in the guise of a tort." Likewise, the plaintiff here has pleaded no injury independent of his termination. Because the fraud claim is redundant, plaintiff's contract claim is his sole remedy.

## FACTS

For the purposes of this motion, Mr. Hanrahan accepts as true the well-pleaded facts contained in plaintiff's Complaint -- but not "[b]ald contentions, unsupported characterizations and legal conclusions."[1]

### 1.    The Parties.

Defendant Michael G. Hanrahan, Esq. is a New York attorney, admitted in 1975, with an office in Pelham, New York.  He is a sole practitioner.  The Complaint alleges that Mr. Hanrahan is the attorney for defendants Architectural Interior Maintenance Inc. ("AIM") and John Langenbacher Company Inc. ("Langenbacher").  (Compl. ¶ 7).  The caption of the Complaint lists him both "as Corporate Attorney for Architectural Interior Maintenance Inc." and "Individually."

Plaintiff Steven E. Straus alleges that he is a resident of Connecticut and was previously the Vice President and General Manager of AIM and Executive Vice President and General Manager of Langenbacher.  (Compl. ¶¶ 1, 14).

AIM and Langenbacher are alleged to be corporations with their principal office at 888 Longfellow Ave, Bronx, New York.  (Compl.  ¶ 3).

Mrs. Joan L. Boyd is alleged to be the owner of AIM and Langenbacher.  (Compl. ¶ 4).

Matthew H. Boyd, Mrs. Boyd's son, is alleged to be the president of AIM and the CEO of Langenbacher. (Compl. ¶5).  His brother, William Boyd, is alleged to be the former president of Langenbacher.  Plaintiff's claims against Matthew Boyd and William

---

[1] See *Garber v. Legg Mason Inc.,* 537 F. Supp. 2d 597, 610 (S.D.N.Y. 2008) (Chin, J.) *citing Gavish v. Revlon, Inc*., No. 00 Civ. 7291 (SHS), 2004 U.S. Dist. LEXIS 19771, 2004 WL 2210269, at *10 (S.D.N.Y. Sept. 30, 2004).  A copy of the Complaint is annexed as Exhibit A to the Declaration of George R. Hinckley Jr. dated September 5, 2008 ("Hinckley Decl.").

Boyd were dismissed, with prejudice, by Stipulation and Order dated June 28, 2008 [Docket #21].

### 2.    The Written Employment Contract Alleged by Plaintiff.

Plaintiff alleges that he was employed as a "Vice President and General Manager of [AIM] and Senior Management Consultant to the CEO of [Langenbacher] (Compl. ¶ 9) and that he resigned from these positions in March 2006. Plaintiff alleges that after he resigned, Matthew Boyd requested that he return to work for AIM and Langenbacher and that he "agreed to return to both defendant corporations provided he was employed pursuant to a written employment contract." (*Id.* ¶ 11). Plaintiff returned to work at AIM and Langenbacher just six weeks after resigning. (*Id.* ¶ 27).

Plaintiff alleges that he met with Mr. Hanrahan and Matthew Boyd in May 2006 and at that time received a written employment contract. (Compl. ¶ 12). He asserts that the contract was for an annual salary of $102,500.00. (*Id.* ¶ 13).

Plaintiff also alleges that he "***refused to sign the contract in May 2006 without a signature or written assurances that the owner was committed to rebuilding Langenbacher and sustaining Architectural Interior Maintenance.***" (Compl. ¶16). (Emphasis added.).

Plaintiff returned to work for AIM and Langenbacher in or about May, 2006. (Compl. ¶¶ 11-14, 27). Plaintiff alleges that eight months later, in January 2007, he signed the written employment contract that he claims to have received back in May 2006. (*Id.* ¶ 17).

**3.    Plaintiff's Breach of Contract Claim for $297,615 against AIM and Langenbacher -- Which is Not Pleaded Against Mr. Hanrahan.**

Plaintiff alleges that his employment at AIM and Langenbacher was "terminated effective February 15, 2008, due to the closure of both defendant corporations." (Compl. ¶ 21). He asserts that his employment contract has an expiration date of January 11, 2010. (*Id*. ¶17).

Plaintiff's first cause of action, for breach of his employment contract, seeks damages of $297,615.00 for unpaid salary, vacation time, "comp time" and medical benefits. (Compl. ¶ 21). The breach of contract claim is not pleaded against Mr. Hanrahan, who is not a party to any contract.

**4.    Plaintiff's "Fraudulent Inducement" Allegation – An Alleged Statement by Mr. Hanrahan Regarding the Commitment of Mrs. Boyd to the "Continuation" and "Longevity" of AIM and Langenbacher.**

In paragraph 30 of his Complaint, plaintiff alleges that he "based his decision to return to the defendant corporations based on several promises made to him, *and made part of the language of the employment contract*." (Emphasis added.). In paragraph 31 and 32 he continues:

> 31.    One of these promises was that the owner of the company, Joan L. Boyd, was committed to rebuilding defendant John Langenbacher Company Inc., and to sustaining AIM, Inc.
>
> 32.    Based on the assurances of defendants Matthew Boyd and Michael Hanrahan at the May 18, 2006 meeting at defendant Hanrahan's offices with respect to the commitment by the defendant corporations to continuation [sic] and longevity of Architectural Interior Maintenance and John Langenbacher, plaintiff resigned from RIMI and returned to work for the defendant corporations.

In paragraphs 33 to 51 plaintiff describes various events relating to financial difficulties at Langenbacher and AIM (IRS debt, union issues, loss of business, etc.) that

led to the winding down of the businesses and the termination of his employment on

February 15, 2008.[2]

In paragraph 52-55 of his Complaint, plaintiff alleges that:

52.     That the foregoing clearly demonstrates that defendants Matthew Boyd and Michael Hanrahan, on behalf of the defendant corporations and their owner, knowingly, intentionally, and maliciously misrepresented to plaintiff on May 18, 2006 that the owner of the defendant corporations was committed to pursuing longevity and continuation of Defendants Architectural Interior Maintenance and John Langenbacher Company, Inc.

53.     That the statement was false when stated to plaintiff by defendants Matthew Boyd and Michael Hanrahan made [sic] solely for the purposes of inducing him to resign from RIMI and rejoin the defendant corporations.

54.     That plaintiff relied on the false representations of defendants Matthew Boyd and Michael Hanrahan to the plaintiff's detriment, which constituted fraud.

55.     That defendant's Matthew Boyd's fraudulent actions are attributable to both Architectural Interior Maintenance Inc., and John Langenbacher Co., Inc.

Finally, in paragraph 56, plaintiff's claims, without providing any specifics, that

"plaintiff has been damaged by the conduct of defendants in the amount of TEN

MILLION DOLLARS ($10,000,000.00)."

---

[2] Plaintiff also alleges, at paragraphs 47, 50, and 51 that he filed three grievances against Mr. Hanrahan with the Ninth Judicial District Grievance Committee. While these repeated filings have nothing to do with plaintiff's "fraudulent inducement" claim, fairness demands that the Court take judicial notice that all three of these claims have been dismissed. See Hinckley Decl. Ex. B. These findings, that Mr. Hanrahan did not engage in any unethical conduct, are entitled to preclusive effect. See *A to Z Assocs. v. Cooper*, 215 A.D.2d 161, 626 N.Y.S.2d 143 (1st Dep't 1995).

**5.**    **Plaintiff's Claim Against Mr. Hanrahan Under § 349 of the N.Y General Business Law Has Been Dismissed With Prejudice.**

By Stipulation and Order dated June 28, 2008 [Docket #21], plaintiff's claim under § 349 of the NY General Business Law was dismissed, with prejudice.  Thus, the only claim asserted against Mr. Hanrahan is the "fraudulent inducement" allegation described above.

## ARGUMENT

## I.

## PLAINTIFF HAS FAILED TO STATE A CLAIM FOR FRAUDULENT INDUCEMENT

**A.**    **The Standard on a Motion to Dismiss.**

On a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, the Court must accept the factual allegations of the non-moving party as true and draw all reasonable inferences in its favor.  See *Garber v. Legg Mason, Inc.* 537 F. Supp. 2d 597, 610 (S.D.N.Y. 2008) (Chin, J.).

In its decision in *Bell Atlantic Corp. v. Twombly*, 547 U.S.___, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the Supreme Court announced the "retirement" of the oft-quoted "no set of facts" language from *Conley v. Gibson*, 355 U.S. 41, 45-47(1957), adopting in its place a  stricter "plausibility" requirement. *Bell Atl. Corp.,* 127 S. Ct. at 1969.  As interpreted by the Second Circuit, *Bell  Atlantic Corp.* "requir[es] a flexible 'plausibility standard,' which obligates a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007), *cert. granted*, 128 S.Ct. 2931 (2008).  The question is whether the pleading alleges "'enough facts to state a claim

for relief that is plausible on its face.'" *Patane v. Clark,* 508 F.3d 106, 111-12 (2d Cir. 2007) (quoting *Bell Atl. Corp.,* 127 S. Ct. at 1974).

In deciding a motion to dismiss, the Court may consider the pleadings and attached exhibits, documents incorporated by reference, and matters subject to judicial notice. Bald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations and will not defeat the motion. See *Garber v. Legg Mason, Inc.* 537 F. Supp. 2d at 610 (Chin, J.); *Telenor East Invest AS v. Altimo Holdings & Investments Ltd.*, 2008 U.S. Dist LEXIS 23458, 07 Civ. 4829 (DC) at * 16-17 (S.D.N.Y. March 25, 2008) (Chin, J.).

**B.    Plaintiff's Fraud Claim Must Be Dismissed Because It Is Duplicative of His Contract Claim.**

Plaintiff's assertion that Mr. Hanrahan (and/or Matthew Boyd) stated that Mrs. Boyd was committed to pursuing the "continuation and longevity" of her businesses simply does not plead a claim for fraud under New York law. At most, it is a merely statement of intent to perform under the contract, which is not actionable in tort.

**1.    New York Law Precludes Fraud Actions Where the "Only Fraud Charged Relates to a Breach of Contract."**

Plaintiff's claims do not sound in fraud. The "Second Circuit has held that, as a general rule, the allegation that a party entered into a contract intending to breach that contract is insufficient to support a claim for fraud under New York law." *Marriott Int'l Inc. v. Downtown Athletic Club of New York City, Inc.,* 2003 U.S. Dist. LEXIS 9570, 02 Civ. 3906 (MBM), 2003 WL 21314056, at *6 (S.D.N.Y. June 6, 2003) (citing *Manning v. Utils. Mut. Ins. Co.,* 254 F.3d 387, 401 (2d Cir. 2001) (a representation that "is merely a statement of intent to perform under the contract cannot constitute fraud");

8

*Bridgestone/Firestone, Inc., v. Recovery Credit Servs., Inc*., 98 F.3d 13, 19-20 (2d Cir. 1996) (dismissing a fraud claim where the alleged misrepresentations "amount[ed] to little more than intentionally-false statements . . . indicating [defendant's] intent to perform under the contract")); *TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 90 (2d Cir. 2005) ("under New York law, the failure to disclose an intention to breach is not actionable as a fraudulent concealment").  See also *Irwin Sales, Inc. v. Prodigy Servs. Corp*., 2000 U.S. Dist. LEXIS 9782, 99 Civ. 10878 (DC) (S.D.N.Y. July 14, 2000) (Chin, J.) ("It is well-settled under New York law that a plaintiff cannot convert a breach of contract claim into a fraud claim merely by adding 'an allegation that defendant never intended to uphold [its] end of the deal.'") *citing Sudul v. Computer Outsourcing Servs., Inc*., 868 F. Supp. 59, 62 (S.D.N.Y. 1994); *Stumm v. Drive Entm't, Inc*., 2001 U.S. Dist. LEXIS 21675, No. 00 Civ. 4676 (DC), 2002 WL 5589 (S.D.N.Y. Jan. 2, 2002), at *7 (Chin, J.) ("Where the fraudulent conduct alleged amounts only to the defendant's false representation that it was adhering to the terms of the contract, the claim for fraud must be dismissed. . . .") (citation omitted); *Bridgeway Corp., v. Citibank*, N.A, 132 F. Supp. 2d 297 (S.D.N.Y. 2001) (Chin, J) (same); *CAMOFI Master LDC, v.  College Partnership, Inc*., 452 F. Supp. 2d 462, 481 (S.D.N.Y. 2006) (Chin, J.) (same).

Thus, when applying New York law, courts in the Southern District "have consistently dismissed fraud claims predicated on allegations that defendants did not intend to meet their contractual obligations." *Marriott Intern. , supra,* 2003 U.S. Dist. LEXIS 9570, 2003 WL 21314056, at *6 (*citing Town of Haverstraw v. Columbia Elec. Corp*., 237 F. Supp. 2d 452, 455 (S.D.N.Y. 2002)).[3]

---

[3] See also *DynCorp v. GTE Corp*., 215 F. Supp. 2d 308, 324 (S.D.N.Y. 2002); *Cougar Audio, Inc. v. Reich*, 2000 U.S. Dist. LEXIS 4894, No. 99 Civ. 4498, 2000 WL 420546, at *6 (S.D.N.Y. Apr. 18, 2000);

Likewise, in *Smalley v. Dreyfus Corp.*, 10 N.Y.3d 55, 59 882 N.E.2d 882, 853 N.Y.S.2d 270 (2008) (discussed in more detail *infra*), the New York Court of Appeals recently rejected "fraudulent inducement" claims brought by several former employees based upon false statements that Dreyfus had no intention to merge with another firm, holding that "Absent injury independent of termination, plaintiffs cannot recover damages for what is at bottom an alleged breach of contract in the guise of a tort."

2.    **Plaintiff's Allegations Regarding a Commitment to Pursuing "Continuation and Longevity" Pleads Nothing More Than an Intent to Perform under the Contract.  This Is Insufficient to State a Claim for Fraud.**

The gravamen of plaintiff's Complaint is that he was terminated from his job before the end of the alleged contract period.  The claim against Mr. Hanrahan is that he, acting as attorney for AIM, stated that Mrs. Boyd was committed to pursuing the "continuation and longevity" of AIM and Langenbacher (Compl.  ¶¶ 30, 31, 52).  This statement amounts to nothing more than an expression of a belief by a lawyer that his client intends to remain in business.  It is a statement of intention, not fact. Indeed, it is even more attenuated than a promise to perform the contract, which is not actionable.  It is a statement of an opinion by a lawyer that his *client* intends to perform. (It is also worth noting that plaintiff in fact remained employed by AIM and Langenbacher for one year and eight months after this alleged statement.)

---

*Papa's June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1160-61 (S.D.N.Y. 1996); *Factory Associates & Exporters, Inc. v. Lehigh Safety Shoe Co. LLC*, 2007 U.S. Dist. LEXIS 46290, 2007 WL 1834599, at *7 (N.D.N.Y. June 26, 2007) ("no fraud claim exists because the claim is no different than Plaintiff's breach of contract claims . . . and seeks the same damages"); *Sichel v. Unum Provident Corp.* 230 F. Supp. 2d 325, 328 (S.D.N.Y. 2002) ("New York law 'precludes fraud actions where the 'only fraud charged relates to a breach of contract.'" *citing Lomaglio Assoc., Inc., v. LBK Mktg. Corp.,* 892 F. Supp. 89, 94 (S.D.N.Y. 1995).

Any person involved with providing an employee with an employment contract could be said to be committing to the "continuation and longevity" of the business during the contract term. Allowing the assertion of claims such as this would convert countless run-of-the-mill contract disputes into multi-party tort claims against lawyers and others. This is precisely the type of "fraud" claim that is repeatedly dismissed, at the pleading stage, by both federal and state New York courts. It is the type of claim that could be asserted by any employee of a failed business. It simply is not sufficient to state a claim for fraud under New York Law. It is not even close.

For example, in *Bridgestone/Firestone*, the defendant "falsely represented" that a corporation "intended to remit all sums due and owing to BFI Click for Enhanced Coverage Linking Searches under the Collection Agreement," citing, as specific examples, several checks allegedly submitted to … as payment with knowledge that they were drawn on insufficient funds." The Second Circuit found this was not sufficient to make out a fraud claim, holding:

> We may assume that these representations were intended to lull BFI Click for Enhanced Coverage Linking Searches into a false sense of security and that they did so to BFI Click for Enhanced Coverage Linking Searches's detriment. , these facts amount to little more than intentionally-false statements by Beladino indicating his intent to perform under the contract. That is not sufficient to support a claim of fraud under New York law.

98 F.3d at 20.

Similarly, in *CAMOFI Master LDC, v. College Partnership, Inc*., 452 F. Supp. 2d 462, 481 (S.D.N.Y. 2006) (Chin, J.), this Court dismissed fraudulent inducement claims, for failure to state a claim, where the plaintiff pleaded that it was fraudulently induced to enter into the Banking Agreement, issue stock, and execute promissory notes based on the defendant's misrepresentations of services that it would perform under a

Banking Agreement.  The plaintiff in *CAMOFI* claimed that the defendant had misrepresented that the promissory notes "would only be temporary financing that would be replaced by permanent financing."  The Court found this to be insufficient to state a claim for fraud.

*Sudul v. Computer Outsourcing Servs., Inc.*, 868 F. Supp. 59 (S.D.N.Y. 1994), involved a set of facts very similar to those in the case at bar.[4]  As here, the plaintiff was employed as a senior executive of the defendant corporation.  As here, the plaintiff sued for breach of an employment contract and added claims against individuals for fraudulent inducement.  The plaintiff claimed that all four defendants induced him to enter into the employment agreement by promising that the company would honor its obligations under that agreement even though the defendants, from the very moment they entered into the agreement, did not actually intend that the company would do so.  The plaintiff further alleged that he was in a unique legal and economic position to control significant assets that were being purchased by the defendant corporation.  Judge Martin dismissed all but the contract claim for failure to state a cause of action, concluding that "a plaintiff such as the one in the present case should not be allowed to bootstrap a breach of contract claim into a fraud claim by simply including in his complaint and allegation that the defendant never intended to uphold his end of the deal."  *Id.*  at 62.  As is true here, "the only concrete loss to which [the plaintiff] can point is the loss of his future salary under the employment agreement: contract damages, not fraud damages."  *Id.*  at 63.

In the instant case, plaintiff's allegations – that a lawyer stated that the business owner was committed to pursuing the longevity of her business – are less specific, and

---

[4] *Sudul* was cited with approval by this Court in *Irwin Sales, Inc. v. Prodigy Servs. Corp.*, 2000 U.S. Dist. LEXIS 9782 (S.D.N.Y. July 14, 2000) (Chin, J.) and again in *Bridgeway Corp., v. Citibank, N.A*, 132 F.

even more clearly in the nature of a general commitment to perform a contract, than were the allegations of fraud in *Bridgestone/Firestone*, *CAMOFI*, *Sudul* and numerous other contract cases that have been dismissed for failure to state a claim for fraud.

> **3.      Plaintiff's Complaint Admits that the Claimed Promises Regarding Mrs. Boyd's Commitment to "Rebuilding" and "Sustaining" Her Businesses Are Part of His Alleged Employment Contract.  Thus, the Only Fraud Charged Relates to a Breach of Contract.**

Plaintiff's Complaint admits, at paragraphs 30 to 31, that the very same promises that are alleged as constituting the "fraudulent inducement" are in "part of the language of the employment contract" alleged by plaintiff.  The Complaint clearly states:

> 30.      Plaintiff also based his decision to return to the defendant corporations based on several promises made to him, and made part of the language of the employment contract.

> 31.      One of these promises was that the owner of the company, Joan L. Boyd, was committed to rebuilding defendant John Langenbacher Co. Inc., and to sustaining AIM, Inc.

Thus, by plaintiff's own admission in his Complaint, the "only fraud charged relates to a breach of contract."  See, e.g., *Sichel v. Unum Provident Corp*. 230 F. Supp. 2d 325, 328 (S.D.N.Y. 2002).

A promise that is asserted to be part of an alleged contract obviously cannot be considered "collateral" to that contract.  See *International CableTel v. Le Groupe Videotron Ltee*, 978 F. Supp. 483, 488 (S.D.N.Y. 1997) (Sotomayor, J.) (false statement that defendant would negotiate exclusively with plaintiff cannot sustain claim for fraud where contract alleged also included requirement to negotiate exclusively; "a false statement which goes to the 'root' of an agreement is of course not a false statement which can be deemed 'collateral' to that agreement").

---

Supp. 2d 297, 304 (S.D.N.Y. 2001) (Chin, J.).

**4.** **Plaintiff's "Fraudulent Inducement" Claim Is Barred by the Recent Decision of the New York Court of Appeals in *Smalley v. Dreyfus*.**

In *Smalley v. Dreyfus Corp*., 10 N.Y.3d 55 (2008), the New York Court of Appeals recently addressed the precise issue presented here:  Whether a plaintiff can plead a tort claim for fraudulent inducement where the claimed fraudulent promise concerns the duration of employment.  The Court found that the fraudulent inducement claims should have been dismissed for failure to state a claim, holding, *inter alia,*  that "absent injury independent of termination, plaintiffs cannot recover damages for what is at bottom an alleged breach of contract in the guise of a tort."

In *Smalley,* five plaintiffs sued Dreyfus for fraudulent inducement to enter into and remain in the employment of Dreyfus.  Their complaint alleged: (1) The plaintiffs had heard a rumor that Dreyfus was merging with the firm of Standish, Aye & Wood; (2) Dreyfus's CEO told one of the plaintiffs that no merger had occurred or was being considered; (3) Other officers of Dreyfus also repeatedly denied any planned merger; and (4) Plaintiffs accepted jobs with Dreyfus in reliance upon the statements by officers of Dreyfus. 10 N.Y.2d at 57. The plaintiffs were terminated after a merger.

The *Smalley* trial court dismissed plaintiffs' complaint, holding that at-will employees cannot reasonably rely upon their employer's promises of continued employment, and that these employees failed to allege injuries apart from their termination.  The Appellate Division, four-one, reinstated the fraudulent inducement claim, concluding that Dreyfus misrepresented a present, material fact.  The Court of Appeals reversed, holding:

> New York law is clear that absent "a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an

employment at will remains unimpaired" (*Murphy v American Home Prods. Corp., 58 NY2d 293, 305, 448 N.E.2d 86, 461 N.Y.S.2d 232 [1983]*). Thus, either the employer or the employee generally may terminate the at-will employment for any reason, or for no reason. In the decades since *Murphy*, we have repeatedly refused to recognize exceptions to, or pathways around, these principles (*see Horn v New York Times, 100 NY2d 85, 790 N.E.2d 753, 760 N.Y.S.2d 378 [2003]; Ingle v Glamore Motor Sales, 73 NY2d 183, 535 N.E.2d 1311, 538 N.Y.S.2d 771 [1989]; Sabetay v Sterling Drug, 69 NY2d 329, 506 N.E.2d 919, 514 N.Y.S.2d 209 [1987]; Weiner v McGraw-Hill, Inc., 57 NY2d 458, 443 N.E.2d 441, 457 N.Y.S.2d 193 [1982]*).

Relying on a decision of the United States Court of Appeals for the Second Circuit -- *Stewart v Jackson & Nash (976 F2d 86 [2d Cir 1992])* -- plaintiffs urge that theirs is not a breach of contract case, but rather a legally cognizable tort claim, for fraudulent inducement.

In *Stewart*, defendant law firm recruited an environmental law attorney (plaintiff Victoria Stewart), telling her that it had secured a large environmental law client, that she would work on that client's matters and that the firm was establishing an environmental law department, which she would head. When Stewart arrived at the firm, however, she learned that the firm was still trying to secure the client, and she performed only general litigation work. The firm later terminated her employment, and she brought suit for damages. Reversing the United States District Court, the Second Circuit denied the law firm's motion to dismiss Stewart's fraudulent inducement claim both because the firm's promises concerning the environmental law client and department were misstatements of present fact, and because the alleged injuries -- thwarting her professional objective to specialize in environmental law, and damaging her career potential -- occurred well before plaintiff's termination and were unrelated to it.

Without adopting or rejecting the Second Circuit's rationale, we note that *Stewart* is fundamentally different from the case now before us. The core of plaintiffs' claim is that they reasonably relied on no-merger promises in accepting and continuing employment with Dreyfus, and in eschewing other job opportunities. Thus, unlike *Stewart*, plaintiffs alleged no injury separate and distinct from termination of their at-will employment. In that the length of employment is not a material term of at-will employment, a party cannot be injured merely by the termination of the contract -- neither party can be said to have reasonably relied upon the other's promise not to terminate the contract. Absent injury independent of termination, plaintiffs cannot recover damages for what is at bottom an alleged breach of contract in the guise of a tort. [footnote omitted]

15

The message of the New York Court of Appeals in *Smalley* is clear:  With regard to the length of employment, an employee must rely only upon the terms of his or her contract.  If plaintiff has a valid contract with AIM or Langenbacher, then that contract governs his rights upon termination.  That contract, if it exists, is with AIM and/or Langenbacher, not the companies' lawyer, Mr. Hanrahan. Plaintiff may not dress up his breach of contract claim "in the guise of a tort," so as to bring a meritless claim against an attorney who is not a party to any contract with plaintiff.

In this case, the core of plaintiff's "fraudulent inducement" claim is that he relied upon statements by Mr. Hanrahan and/or Matthew Boyd about Mrs. Boyd's commitment to the "continuation" and "longevity" of the businesses in accepting and continuing employment with AIM and Langenbacher.  He alleges no injury separate and distinct from termination of his employment.  If plaintiff has a contract, then that contract governs his rights.  The Complaint against Mr. Hanrahan should be dismissed.

**C.    Plaintiff Fails to Plead a Claim for Fraud.**

Under New York law, to state a claim for fraud, "'a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3)  the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damages as a result of such reliance.'"  *Pennecom B.V.,  Merrill Lynch & Co*., Inc., 2005 U.S. Dist. LEXIS 18130, 02 Civ. 5355 (DC) at * 19-20 (S.D.N.Y. August 25, 2005) (Chin, J.) quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co*., 375 F.3d 168, 186-87 (2d Cir. 2004) (citation omitted).

Rule 9 (b) requires that fraud be pled with particularity; a plaintiff must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the

speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent. See *Pennecom B.V. supra,* 2005 U.S. Dist. LEXIS 18130 at * 19-20.

 1. **Plaintiff Fails to Allege a False Statement of a Present, Material Fact.**

A viable fraud claim requires a false statement of a present, material fact -- not a promise to be performed in the future. See, e.g., *Rabin v. MONY Life Ins. Co.*, 2007 U.S. Dist. LEXIS 18437 (S.D.N.Y. Mar. 8, 2007) (Swain, J.) (A "cause of action for fraud and inducing a contract cannot be based solely upon a failure to perform contractual promises of future acts. An alleged failure to perform such acts is a breach of contract which must be enforced by an action on the contract"); *International CableTel v. Le Groupe Videotron Ltee*, 978 F. Supp. 483, 488 (S.D.N.Y. 1997) (Sotomayor, J.) *(*defendants' "allegedly false statements of future intent" cannot support cause of action for fraud); *D.S. Am. (E.) v. Chromagrafx Imaging Sys.*, 873 F. Supp. 786, 795-96 (E.D.N.Y. 1995) (Wexler, J.) (fraud claim requires a "a misrepresentation of present fact, not of future intent" that is extraneous to the contract); *O'Connor v. Reader's Digest Assoc., Inc.,* 1993 U.S. Dist. LEXIS 13156, No. 92 Civ. 7414 (S.D.N.Y. Mar. 10, 1993) (Brieant, C.J) ("a fraud claim cannot be based upon a statement of future intention, promises or expectations which were speculative or a mere expression of opinion or hope at the time when made").

Here, of course, the claim that Mr. Hanrahan stated that "the owner of the defendant corporations was committed to pursuing longevity and continuation of defendants [AIM] and [Langenbacher]" (Compl. ¶52) is a claim about Mrs. Boyd's intentions for the future. Opinions about pursuing "longevity" and "continuation"

obviously look forward in time to the future. They concern the opinion of Mrs. Boyd's lawyer about her intentions in the future. This does is not by any means constitute a statement of a present, existing material fact. Plaintiff's fraud claim should be dismissed for this reason alone.

> **2.    Mr. Hanrahan's Alleged Expression of his Opinion Regarding His Client's Commitment to "Pursuing Longevity and Continuation" of Her Business Is Not Actionable as Fraud.**

Mr. Hanrahan's alleged expression of his opinion that Mrs. Boyd was "was committed to pursuing longevity and continuation" of AIM and Langenbacher is not a statement of fact. It is plainly an opinion, a prediction – albeit a very general one at that - - as to Mrs. Boyd's likely intentions in the future with regard to the businesses. This cannot support a claim of fraud. See, e.g., *O'Connor v. Reader's Digest Assoc., Inc.,* 1993 U.S. Dist. LEXIS 13156 at *8, No. 92 Civ. 7414, (S.D.N.Y. Mar. 10, 1993) ("fraud claim cannot be based upon statement of . . . mere expression of opinion"); *Sheth v. New York Life Ins. Co.,* 273 A.D.2d 72, 709 N.Y.S.2d 74, 75 (1st Dep't 2000) (purported misrepresentations that are "conclusory and/or constitute mere puffery, opinions of value or future expectations" may not form basis for fraudulent misrepresentation); *American Food & Vending Corp. v. Int'l Business Machines Corp.,* 245 A.D.2d 1089, 667 N.Y.S.2d 545, 546 (4th Dep't 1997) (expression of opinion will not support an action for fraud); *Kimmell v. Schaefer,* 224 A.D.2d 217, 637 N.Y.S.2d 147, 149 (1st Dep't 1996) *aff'd*, 88 N.Y.2d 805, 670 N.E.2d 226 (1996) (opinions are not actionable unless they are statements of material fact).

In *O'Connor v. Reader's Digest Assoc., Inc.,* 1993 U.S. Dist. LEXIS 13156 at *8, No. 92 Civ. 7414, (S.D.N.Y. Mar. 10, 1993), an employee claimed fraudulent

inducement, relying upon a letter agreement that provided that it was "*anticipated*" that the employee's assignment in Italy would be for "*approximately* three years duration." Chief Judge Brieant dismissed a claim for fraud, holding first that the fraud claim was duplicative of the contract claim. He went on to hold that, "[m]oreover, even if plaintiff's fraud claim can be construed to extend to promises which go beyond the terms of the contract, a fraud claim cannot be based upon a statement of future intention, promises or expectations which were speculative, or a mere expression of opinion or hope at the time when made." 1993 U.S. Dist. LEXIS 13156 at * 8.

Here, in contrast, Mr. Hanrahan's alleged expression of opinion about his client's general commitment to pursuing "rebuilding" and "longevity" is even less specific, and more plainly a general statement of opinion, than was the specific letter at issue in *O'Connor.* Thus, it is not actionable.

> ### 3. Plaintiff Does Not Allege Facts Supporting Reasonable Reliance Upon Mr. Hanrahan's Alleged Verbal Assurances Regarding Mrs. Boyd's Commitment to "Pursuing Longevity" of AIM and Langenbacher. On the Contrary, the Complaint Alleges the Exact Opposite.

Plaintiff has not alleged facts from which this Court can draw a plausible inference that he reasonably relied upon Mr. Hanrahan's alleged verbal assurances about Mrs. Boyd's commitment to "pursuing longevity" and "rebuilding" Langenbacher and "sustaining" AIM.

First, it should be noted that in May 2006 plaintiff was no stranger to Mrs. Boyd, AIM or Langenbacher. He was the General Manager and Vice President of AIM and Executive Vice President and General Manager of Langenbacher. (Compl. ¶¶ 1, 14). As such, he was clearly in a position to know the details of AIM and Langenbacher's financial condition. He knew the businesses and he knew Mrs. Boyd. He was in a far

better position that counsel to know the companies' financial condition.  These allegations are simply not plausible on their face.

The Complaint itself, however, puts the matter beyond doubt.  The Complaint specifically alleges that plaintiff did <u>not</u> rely upon Mr. Hanrahan's *verbal* assurances regarding Mrs. Boyd's intentions but that he instead demanded *written* assurances from the owner.  Paragraph 16 - 17 of the Complaint alleges as follows:

> 16.    Plaintiff refused to sign a contract in May 2006 without a signature or written assurances that the owner was committed to rebuilding Langenbacher and sustaining Architectural Interior Maintenance.

> 17.    In January 2007, plaintiff received the aforementioned letter in assurance, signed the contract making the contract effective, and accepted the offers contained in the contract with the consideration provided for therein.  As agreed the effective date of the contract was January 11, 2007 and the expiration date was January 11, and 2010.

Thus, the Complaint itself shows there was no reasonable reliance.  Moreover, as discussed above, under *Smalley v. Dreyfus Corp.*, 10 N.Y.3d 55 (2008), plaintiff was entitled to reasonably rely only upon his alleged written contract for any assurances regarding the duration of his employment.  Both New York case law and the Complaint itself confirm that plaintiff was not entitled to rely upon, and in fact did not rely upon, and any verbal assurances concerning a "commit[ment] to pursuing longevity" purportedly made by the lawyer for his employer.  The Complaint against Mr. Hanrahan must therefore be dismissed.[5]

---

[5] See, e.g., *Pennecom B.V. v. Merrill Lynch & Co., Inc.*, 2005 U.S. Dist. LEXIS 18130 at *24 (S.D.N.Y. August 24, 2005) (Chin, J.)(fraud claim not stated because there was no indication that plaintiff believed the allegedly false statements or acted -- or failed to act – in reliance upon any such false statements).

**D.     The Complaint Against Mr. Hanrahan Should Also Be Dismissed Under the Doctrine of Agent Immunity.**

> It is a general rule that attorneys-at-law, in the exercise of their proper functions as such, are not liable for their acts when performed in good faith and for the honest purpose of protecting the interests of their clients.  The public interest demands this. If attorneys cannot act and advise freely and without constant fear of being harassed by suits and actions at law, parties could not obtain their legal rights.

*Campbell v. Brown*, 2 Woods 349, 4 F. Cas. 1158 (C.C.W.D. Tex. 1876).

The Complaint in this case alleges nothing more than a lawyer acting for his client within the scope of his authority.  Mr. Hanrahan is not a principal in this case; he is simply a lawyer for AIM and Langenbacher. He is an agent. See 6 NY Jur. 2d, *Attorneys at Law*, § 82, *et seq.*  There is no allegation of facts indicating that he ever acted other than in his capacity as an attorney, or that any actions of his were motivated by self-interest.  There is no allegation that he acted outside the scope of his authority.

As an agent, an attorney is not liable for inducing his principal to breach a contract with a third person, where he is acting on behalf of his principal within the scope of his authority, nor is he liable to third parties for purported injuries caused by services performed on behalf of a client or advice offered to that client, absent a malicious or tortuous act.  See, e.g., *Murtha v. Yonkers Child Care Ass'n, Inc.,* 45 N.Y.2d 913, 915, 383 N.E.2d 865, 411 N.Y.S.2d 219  (1978); *Burger v. Brookhaven Medical Arts Bldg., Inc.*, 131 A.D.2d 622, 516 N.Y.S.2d 705 (2d Dep't 1987); *Kartinganer Assocs. v Town of New Windsor*, 108 A.D. 2d 898, 485 N.Y.S.2d 782 (2d Dep't 1985).

In *Novak, v. Scarborough Alliance Corp*., 481 F. Supp. 2d 289 (S.D.N.Y. 2007), the plaintiff employee alleged that he suffered damages as a result of his reasonable reliance on defendants' misrepresentations when accepting his position of Senior Vice

21

President of a corporation. Rather than allege "fraudulent inducement," as here, the plaintiff in *Novak* framed his complaint as one for promissory estoppel. The complaint was brought against the corporation and also against its President, individually. Judge Conner, applying New York law, dismissed the individual claims on agency grounds, holding:

> Generally, "[a] director [or officer] of a corporation is not personally liable to one who has contracted with the corporation on the theory of inducing a breach of contract, merely due to the fact that, while acting for the corporation, he has made decisions and taken steps that resulted in the corporation's promise being broken." *Murtha v. Yonkers Child Care Ass'n, Inc.*, *45 N.Y.2d 913, 915, 383 N.E.2d 865, 411 N.Y.S.2d 219 (1978)* (internal quotation marks omitted). In the present case, even assuming, *arguendo*, that Cardone exercised absolute dominion over the defendant corporations, plaintiff's claim against him still must fail, for plaintiff has pleaded *no* facts supporting an inference that Cardone committed fraud or wrongdoing or acted in a capacity other than his official one as President and Chief Executive Officer of the corporate defendants.

> Similarly, in *Leve v. Franklin Capital Corp.*, 2004 U.S. Dist. LEXIS 11765, 02

Civ. 2116 (DC) (S.D.N.Y. June 24, 2004) (Chin, J.), *aff'd*, 2005 U.S. App. LEXIS 10815 (2d Cir. June 1, 2005), this Court, applying California law, dismissed "promissory fraud claims" against individual corporate agents where there was no allegation that they were acting outside the scope of their agency. *Id.* at *10-11.

As demonstrated above, plaintiff has wholly failed to plead a valid claim for fraud. Should the claim, however, be viewed as one for "promissory estoppel," or "interference with contract" or "promissory fraud," the result is the same. Plaintiff should not be permitted to drag the lawyer for his former employer into what is a contract dispute, plain and simple. Mr. Hanrahan should not be a party to this action.

## CONCLUSION

Plaintiff's sole claim -- that Mr. Hanrahan, acting as a lawyer for Mrs. Boyd, asserted that she was "committed to pursuing longevity and continuation" of her business -- simply does not state a valid claim for fraud. This is a non-actionable expression opinion about his client's intentions in the future. Moreover, Plaintiff's Complaint itself admits: (1) that plaintiff did <u>not</u> rely upon Mr. Hanrahan's alleged verbal assurances, but instead sought written assurances; and (2) that the purported "longevity and continuation" assurances are not collateral to the contract but are indeed *part of* the contract alleged by plaintiff.

For the reasons set forth therein, Defendant Michael Hanrahan Esq. respectfully requests that the Complaint against him be dismissed, with prejudice.

Dated: New York, New York
      September 5, 2008

                        TRAIGER & HINCKLEY LLP

                  By / s _____
                    George R. Hinckley Jr. (GH-7511)

                    880 Third Avenue
                    New York, New York 10022-4730
                    Tel. (212) 759-4933
                    Fax  (212) 656-1531
                    Attorneys for Defendant
                     Michael Hanrahan, Esq.